UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WENDELL S. ANGLIN,

       Petitioner,

v.                                                      Case No.  8:10-cv-1898-T-33TBM

SECRETARY, DEPARTMENT OF CORRECTIONS,

       Respondent.
_____

**ORDER**

       Before this Court is Petitioner Wendell S. Anglin's *pro se* timely-filed 28 U.S.C. § 2254 petition for writ of habeas corpus. Anglin challenges his conviction and sentence entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida.

       A review of the record demonstrates that, for the following reasons, the petition must be **denied.**

**PROCEDURAL HISTORY**

       On June 17, 2005, the State of Florida charged Anglin by Information with two counts of aggravated assault on a law enforcement officer. The offense was alleged to have occurred on May 25, 2005. Prior to trial, the State amended the Information twice to reflect the charges as two counts of attempted murder in the second degree. Following trial, the jury found Anglin guilty of two counts of aggravated assault with a deadly weapon, lesser-included offenses to the second degree murder charges. On December 8, 2005, the state trial court found that Anglin qualified as both a prison releasee reofferder and a habitual offender.  The state trial court sentenced Anglin to ten years incarceration on each

count. The sentences run concurrently.

<u>RELEVANT EVENTS AT ANGLIN'S TRIAL</u>

At trial, a video tape was played for the jury depicting an incident which occurred at a Lowe's home/hardware store. Two detectives were conducting an investigation of fraud. The subject of the investigation was Alesia Neely, Anglin's girlfriend. In the tape, Anglin was seen driving his vehicle toward the detectives without "slowing down." (Ex. 10, R 137-170). Post-arrest and *Miranda* advisement, Anglin admitted to law enforcement that he was the driver of the vehicle and that he drove his vehicle at the named victims. Anglin admitted he stopped when these victim law enforcement officers displayed their badges. (Ex. 10, R 171- 181).

While Anglin was in jail awaiting trial, Anglin's telephone conversation with an unidentified woman was recorded. The recording was played for the jury. (Ex. 10, R187-198). In this recording, Anglin did most of the talking, which included his own account of what happened:

> The guy was sitting back there looking over video tapes of me and her writing checks at Lowe's. He work [sic] the security door, and I'll be God damn if she ain't standing in the motherfucking line? He's sitting there watching video of us writing checks there the week prior on his security surveillance camera, and there she is standing in line. You know what I'm saying?  I know -- (inaudible) – security cameras. And she was standing in line. And, you know, I called her on two-way, and I could tell by her voice something was wrong. You know what I'm saying? So I hauled ass, and I was up there. I get in the parking lot. Well, there's two fucking people standing there with her, you know, I didn't know if they were managers, police, what the fuck they were. So I tried to run their fucking ass over.

(Ex. 10, R 192-193).

**Direct Appeal**

Anglin filed a Notice of Appeal on January 24, 2006, raising two issues: 1) whether

the trial court abused its discretion in failing to grant a motion for judgment of acquittal; and 2) whether the trial court erred in denying a motion in limine designed to "keep out" Anglin's then pending charges.  In his reply brief, Anglin added a third issue:  whether the trial court abused its discretion in denying Anglin's motion for mistrial when the taped jail telephone call revealed prejudicial information to the jury. (Ex. 6). The state district court of appeal per curiam affirmed Anglin's conviction and sentence on January 3, 2007.  *Anglin v. State*, 946 So.2d 1074 (Fla. 2d DCA 2007)(table).

### Rule 3.850 Motion for Postconviction Relief

On June 5, 2007, Anglin filed a pro se rule 3.850 motion for postconviction relief alleging ineffective assistance of trial counsel based on six separate grounds. (Ex. 9). On October 2, 2007, the state trial court summarily denied grounds one, two, and four, but ordered the State to respond to grounds three, five, and six. (Ex. 10).  Following the State's response (Ex.11), the state trial court denied grounds five and six and granted an evidentiary hearing on ground three. (Ex. 12). The evidentiary hearing took place July 28, 2008. (Ex. 13). Following the hearing, the state trial court denied ground three. (Ex. 14).

Anglin appealed the denial of his rule 3.850 motion. On January 29, 2010, the state district court of appeal per curiam affirmed the denial of postconviction relief. *Anglin v. State*, 27 So.3d 664 (Fla. 2d DCA 2010)(table). (Ex. 18).

Anglin filed a petition for writ of habeas corpus in the state district court of appeal. That court denied the petition on June 14, 2007.  *Anglin v. State*, 959 So.2d 260 (Fla. 2d DCA 2007)(table). (Ex. 19).

Anglin then filed the present 28 U.S.C. § 2254 petition for writ of habeas corpus, raising the same six grounds of ineffective assistance of counsel he raised in his rule 3.850

motion for postconviction relief.

## STANDARDS OF REVIEW

### The AEDPA Standard

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To have a facially valid claim in alleging ineffective assistance of counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

The standard of review is "doubly deferential" when "a *Strickland* claim [is] evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, --- U.S.--- ,129 S. Ct. 1411, 1420

(2009). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Id.* (quotation marks omitted).

## DISCUSSION

### GROUNDS ONE, TWO, AND FOUR

#### GROUND ONE

Trial counsel was professionally ineffective in violation of defendant's Fifth, Sixth, and Fourteenth Amendment Rights for failing to object to editing and compiling of two evidentiary items.

In support, Anglin alleges:

Defense counsel was ineffective for failing to object to the state's use of a segment of a videotape compiled with a portion of a recorded jail conversation. This edited clip, video and audio was played repeatedly through the trial and then during closing rebuttal argument. This created the potential for misleading impressions by taking actions and statements out of context.

#### GROUND TWO

Counsel was ineffective for failing to obtain the defendant's jail phone conversations that showed his actual intent related to the aggravated assault charges.

In support, Anglin alleges:

Counsel failed to examine the Petitioner's recorded jail conversation that pertained solely to the intent behind the actions leading to the agg. assault charge. The jail conversations would have shown that the Petitioner acted out of concern for his girlfriend and that he truly did not have any intent to harm anyone.

#### GROUND FOUR

Counsel was ineffective for failing to request a traffic reconstruction expert to testify on behalf of the defense.

In support, Anglin alleges:

> Counsel did not secure by any of the available means a traffic reconstruction expert to testify about certain motor vehicle determinates particularly relevant to the Petitioner's charges. A traffic reconstruction expert could have testified as to the vehicle's speed relative to its braking distance, turning radius, and other factors, all of which would have cast significant doubt as to Petitioner's criminal liability.

This Court relies on the state trial court's well-reasoned, detailed analysis of Anglin's ineffective assistance of counsel claims. The state trial court articulated *Strickland* as the applicable standard of review before summarily disposing of grounds one, two and four:

> As to claim 1, the Court finds the records directly refute the underlying basis for the allegations. Specifically, the trial transcript establishes that the State introduced the entire videotape and entire audiotape into evidence at trial. See trial transcript at 153-170 and 186-200, respectively, copies of which are attached. Accordingly, because the record directly refutes the claim, claim 1 is DENIED.
>
> In response to claim 2, the Court finds the out-of-court, self-serving, exculpatory statements of the Defendant made after his arrest would have been inadmissible hearsay. See *Lott v. State*, 695 So. 2d 1239, 1242-43 (Fla. 1997). See also Section 90.803, Fla. Statutes. Accordingly, counsel cannot be ineffective for failing to secure and attempt to introduce inadmissible evidence. Based on the foregoing, claim 2 is DENIED.
>
> \*\*\*\*\*
>
> As to claim 4, that defense counsel was ineffective for failing to procure the testimony of a traffic reconstruction expert, the Court finds the claim must be denied. In order to establish ineffective assistance of counsel, Defendant needs to establish that counsel's actions were deficient and, but for such deficiency, the outcome of the proceedings would have been different. See *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); and *Schofield v. State*, 681 So. 2d 736 (Fla. 2d DCA 1996), *remanded on other grounds*, 861 So. 2d 1244 (Fla. 2d DCA 2003). "In reviewing these claims, courts must apply a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must avoid the distorting effects of hindsight. ... A defendant bears the burden of establishing both prongs of the *Strickland* test before a criminal conviction will be vacated." *Schofield* at 737-38. Even assuming the fact that counsel could and should have procured the testimony of an expert traffic reconstructionist, given the amount of incriminating evidence introduced at trial, including Defendant's own confession about his intentions,

> see attachments, failure to procure such an expert's testimony about a circumstance easily understood by the jury members does not rise to the level of causing doubt in the outcome of the proceedings. Accordingly, claim 4 is DENIED.

(Ex. 10).

The state trial court's findings were affirmed on appeal. Anglin has not rebutted the state courts' findings by clear and convincing evidence. Therefore, the findings are presumed to be correct. Similarly, the state courts' resolution of issues of law -- including constitutional issues -- are not contrary to clearly established precedent of the Supreme Court of the United States or involved an unreasonable application of such precedent.

Grounds one, two, and four do not warrant habeas corpus relief.

## **GROUNDS FIVE AND SIX**

### GROUND FIVE

Counsel was prejudicially ineffective in violation of defendant's Fifth, Sixth and Fourteenth Amendment rights for failing to investigate, depose, and call as a witness Alesia Neely, the defendant's girlfriend.

In support, Anglin alleges:

The defendant contends that the failure to subpoena or secure attendance of witness that could have provided exculpatory evidence constitutes ineffective assistance of counsel when the testimony may have cast doubt on defendant's guilt.

### GROUND SIX

Counsel's cumulative effect of prejudicially ineffective assistance of counsel in violation of defendant's Fifth, Sixth and Fourteenth Amendment rights so prejudiced the defendant's rights to a fair trial, that the jury's verdict was erroneous.

The state trial court denied ground five as facially insufficient and ground six as logically untenable. As to the facial deficiency of ground five, because Anglin has always

contended that Neely would testify as to his state of mind, the State asserted that "[A]ny assertion by Ms. Neely as to the Defendant's subjective thoughts would be inadmissible hearsay." (Ex. 12). Further, Anglin failed to show how the omission of Neely's testimony prejudiced his case. In *Magill v. State*, 457 So.2d 1367, 1370 (Fla. 1984), a defendant claimed that his trial counsel had rendered ineffective assistance by not deposing certain witnesses. The Florida Supreme Court held that when making such a claim, a defendant had to identify a "specific evidentiary matter to which the failure to depose witnesses would relate." *Magill*, 457 So.2d at 1370. To do so, the movant had to show "admissible evidence that would be forthcoming from the witnesses . . . or brought out in cross-examination." *Id.* Neely's testimony as proposed by Anglin would not have met the Florida Supreme Court test. The state trial court agreed with the State's assessment and denied claims five and six. With claim three being the only viable claim for an evidentiary hearing, the postconviction court correctly held that the claim of cumulative error could not be sustained. (Ex. 12).

Grounds five and six do not warrant habeas corpus relief.

### GROUND THREE

Counsel was ineffective for advising defendant not to testify on his behalf because of past criminal history and pending charges.

In support, Anglin alleges:

Counsel interfered with Petitioner's right to testify by telling him that the jury would learn the specific nature of his past criminal history and use pending charges as motive for attempted murder charges. Because of this misinformation the petition did not testify. Had he testified, he would have been able to explain his intentions regarding the charges in full detail. The jury only heard the story of the two victims, two law enforcement officers. The Petitioner's misguidance and misinformation about the right to testify rendered any affirmation moot.

At the evidentiary hearing, Anglin asserted that but for his counsel's advice, he would have liked to take the stand in his own defense to tell the jury about his motivation/ state of mind, believing that the testimony would have had an influence on the jury. (Ex. 13, R 226). The problem with this assertion is that the influence could have been a negative influence, as opposed to a positive influence. At the evidentiary hearing, Anglin was confronted with the three different versions of the incident he gave post-arrest, including the jail telephone recording during which he admitted to intending to run the detectives' "fucking ass down." (Ex. 13, R 234-235). In the same hearing, Anglin readily acknowledged that he had been advised by trial counsel that in taking the stand, he would be exposed to impeachment not only of the inconsistencies in his three versions of the incident, but also by his past record and a pending fraud charge. In particular, Anglin acknowledged that his past convictions run "in the area of a hundred," of which twelve or thirteen involved crimes of dishonesty. (Ex. 13, R 227-236). These crimes could constitute *Williams* rule evidence; Anglin understood that these crimes "would be inquired into" if he took the stand. Anglin also acknowledged that he had a very extensive record of felonies, including crimes of dishonesty such as check fraud and ID fraud. (Ex. 13, R 224-225).

On cross-examination, Anglin acknowledged he met with trial counsel several times prior to trial. Through discussions with trial counsel prior to and during trial, Anglin changed his mind "from wanting to not wanting to testify." (Ex. 13, R 228-231).

Trial counsel Vincent Trimarco testified at the evidentiary hearing that as a matter of strategy, he advised his client not to take the stand. Attorney Trimarco testified that he wanted to keep the defense focused on the fact that there were holes in the State's case, and not on the overwhelming number of Anglin's past convictions, especially those

involving dishonesty. (Ex. 13, R 249-252).

Subsequently, the state trial court denied ground three, stating:

**<u>Conclusions</u>**

> After reviewing the relevant pleadings, court files and applicable law, and after observing and evaluating the testimony, demeanor, credibility and veracity of the witnesses at the evidentiary hearing, the Court finds Defendant has failed to meet his burden of establishing, by good and sufficient proof, the first prong of the analysis. Specifically, the Court finds there was no credible evidence presented that Mr. Trimarco ever told the Defendant that, by merely testifying at trial, his prior convictions as well as the substance thereof would have come into evidence or been presented to the jury.
>
> In addition, the court also finds that, notwithstanding the above, there is simply no reason to believe that, even if Defendant had testified at trial, such testimony would have favorably affected the outcome of the trial.
>
> Accordingly, it is **ORDERED AND ADJUDGED** that *Defendant's 3.850 Motion for Postconviction Relief and Incorporated Memorandum of law*, originally filed on July 5, 2007, is now DENIED in toto.

(Ex. 14).

The state trial court's denial of Anglin's postconviction claims was not a departure from clearly established Supreme Court precedent or an objectively unreasonable application of Supreme Court precedent. The state trial court articulated *Strickland* to be the test of effectiveness of counsel and then followed *Strickland*.

Here, the postconviction court's written orders of denial contain factual findings, supported by record citations, and credibility determinations, as well as a thorough application of the law to facts of the case. Anglin appealed the postconviction court's findings and conclusions to the district court which affirmed the postconviction court's action. Anglin presents no argument to this Court as to how either the state trial court or the state district court of appeal violated his Constitutional rights or how either court departed

from or unreasonably applied the established law regarding effective assistance of counsel claims. Other than his disagreement with the outcome, Anglin presents no basis for rejecting the state trial court's credibility determination or application of the law to the facts.

Ground three does not warrant habeas corpus relief.

Accordingly, the Court orders:

That Anglin's petition is denied.  The Clerk is directed to enter judgment against Anglin and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

The Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts because Petitioner has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).

Because Petitioner is not entitled to a certificate of appealability, Petitioner is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on November 2, 2011.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Wendell S. Anglin